IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-17-182 |
| | * | |
| MOHAMMED MUTSHAR ALTASHY | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Mohammed Altashy is a thirty-two-year-old federal prisoner serving a 60-month sentence for the use of a firearm during a crime of violence. Now pending is Altashy's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 35). Altashy seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. *Id*. The government opposes the motion. (ECF 44). For the reasons explained below, the motion will be denied.

## BACKGROUND

In November 2012, Altashy, along with two others, Ansar Ali Younis and an unidentified co-conspirator, planned a robbery of a Walmart located in Laurel, Maryland, where at that time Younis was employed as an assistant manager. (ECF 23, Plea Agreement, at 9). The scheme was to carry out a staged robbery of Younis in his capacity as an employee of Walmart, allowing the group to take money from Walmart's safe, to which Younis had access. (*Id.* at 9–10). The plan was executed in the early morning hours of November 14, 2012. The co-conspirator waited in a van purchased for the scheme while Altashy entered the Walmart and found Younis. Altashy pulled out and brandished a firearm, and loudly ordered Younis to give him the money from the store's safe. The demands were overheard by Walmart employees. Younis took over $450,000 from the safe and put the cash in a trashcan. Altashy then directed Younis to walk out of the store with him, in order to prevent interference by other employees. (*Id.* at 11–12). To further remove suspicion from

1

Younis, once outside, and in view of witnesses, Altashy shot Younis once in the arm. Younis falsely reported the robbery to police and was transported to a hospital for treatment.[1] (*Id.* at 12–13). Altashy was linked to the robbery after witnesses who sold to Altashy the van used in the robbery identified him. (*Id.* at 13). In August 2017, Altashy pled guilty to one count of using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (*Id.* at 1).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On September 1, 2020 Altashy submitted a request for compassionate release to the warden of Fort Dix FCI, where he is currently incarcerated. (ECF 35-1). The government does not contest that Altashy has exhausted his administrative remedies. (ECF 45). Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Altashy's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

---

[1] Younis's injuries were not life threatening. He also was indicted and remains a fugitive.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Altashy argues that his risk of developing serious illness related to COVID-19 due to his underlying medical condition, latent tuberculosis, constitutes an "extraordinary and compelling reason" to reduce his sentence. (ECF 26 at 3–4; ECF 38 at 7–8).

The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 3, 2021). The CDC distinguishes between those conditions where available data is strong enough and consistent enough to indicate that individuals with the condition "are at increased risk" (e.g., obesity), and those where current data is limited or mixed, and thus

3

sufficient only to indicate that an individual with the condition "might be at an increased risk" (e.g., type 1 diabetes). *Id.* While neither latent nor active tuberculosis ("TB") are explicitly listed among these conditions, the CDC has published specific information on the intersection between TB and COVID-19. *See COVID-19 and Global TB*, CDC, https://www.cdc.gov/globalhivtb/who-we-are/about-us/globaltb/globaltbandcovid19.html (last accessed Feb. 4, 2021). It notes that though "[d]ata on COVID-19 and TB are limited for adults," "globally there is mounting evidence that patients with chronic respiratory diseases, including TB, are at increased risk of severe outcomes or dying from COVID-19." *Id.* But the CDC does not describe a similar risk for those who have latent TB, meaning those who are "infected with *M. tuberculosis*, but do not have TB disease," and the likelihood that a latent infection will develop into TB disease is between five and ten percent. *See The Difference Between Latent TB Infection and TB Disease*, CDC, https://www.cdc.gov/tb/publications/factsheets/general/ltbiandactivetb.htm (last accessed Feb. 4, 2021). Moreover, "[a]bout half of those people who develop TB will do so within the first two years of infection." *Id.* Altashy represents that he has been positive for latent TB since 1995. (ECF 35 at 2).

Thus, the risks posed by Altashy's diagnosis are far from clear and he otherwise appears to be a healthy and, at thirty-two, a relatively young man. Absent evidence of other underlying conditions that make Altashy particularly vulnerable to COVID-19, the court does not believe Altashy's latent TB diagnosis alone is grounds for compassionate release. *See, e.g.*, *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *6 (E.D. Pa. July 24, 2020) (federal prisoner in his mid-forties with latent TB failed to establish extraordinary and compelling reason for release); *but see United States v. Atwi*, 455 F. Supp. 3d 426, 431–32 (E.D. Mich. 2020) (inmate presented extraordinary and compelling reason for release where he was diagnosed with latent TB three weeks prior to his motion and it was unclear when the BOP would begin treating the infection).

The court acknowledges Altashy's additional concern about the spread of COVID-19 at Fort Dix FCI. Indeed, Fort Dix has for months experienced a severe COVID-19 outbreak—over half of inmates there have at some point tested positive for the virus. *See COVID-19: Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last accessed Feb. 4, 2021) (reporting 210 inmates currently positive for COVID-19 and 1,460 recovered); *FCI Fort Dix*, BOP, https://www.bop.gov/locations/institutions/ftd/ (last accessed Feb. 4, 2021) (reporting population of 2,719 inmates). But in light of the court's conclusion that Altashy's underlying condition does not rise to the level of an "extraordinary and compelling reason" warranting a sentence reduction, the court also finds that the conditions at Fort Dix do not provide grounds for Altashy's sentence to be reduced. As no extraordinary and compelling reasons exist for a sentence reduction, the court need not address the 18 U.S.C. § 3553(a) factors.[2]

## CONCLUSION

For the foregoing reasons, Altashy's motion for compassionate release (ECF 35) will be denied. The associated motion to seal (ECF 43) will be granted to protect the confidentiality of personal information. A separate order follows.

   2/5/21                                                                  /S/
Date                                                                       Catherine C. Blake
                                                                             United States District Judge

---

[2] The court notes Altashy's assertion that the BOP has determined him eligible for home confinement on March 5, 2021. (ECF 35 at 1–2). The court does not, in denying Altashy's motion for compassionate release, suggest that the BOP should not place him on home confinement once he is eligible.